** Summary ** COUNTY ASSESSOR REVALUATION OF PROPERTY Pursuant to 68 O.S. 2472 [68-2472] (1971), October 1, or as soon as practicable prior thereto, exists as the date that all county property is to be placed upon the tax rolls at its new value. The maintenance of an active and systematic program of revaluation as required by 68 O.S. 2481.1 [68-2481.1] (1971) et seq. is to be financed pursuant to 68 O.S. 2481.4 [68-2481.4] (1971). Well-qualified citizens employed pursuant to 68 O.S. 2481.7 [68-2481.7] (1971) may be compensated as per the provisions of Section 2481.4. The County Assessor is authorized to contract with well-qualified citizens for the listing and revaluation of property beyond the primary phase of revaluation, and that the cost of such assistance would be paid by the County Assessor from funds derived through the operation of Section 2481.4. The Attorney General has considered your opinion request wherein you ask the following questions: "1. Title 68 O.S. 2481.1 [68-2481.1] (1971), provides that a revaluation program which was to commence no later than January 1, 1969, 'show progress at a rate which will result in the revaluation of all taxable property within the county before January 1, 1972.' By what date does all the property of a county have to be placed upon the tax rolls at its new value?" "2. Title 68 O.S. 2481.1 [68-2481.1] (1971) provides in part that 'each assessor shall thereafter maintain an active and systematic program of revaluation on a continuous basis. ' Is the maintenance of an active and systematic program of revaluation after January 1, 1972, to be financed as provided within 68 O.S. 2481.4 [68-2481.4] (1971)?" "3. If the answer to No. 2 is in the affirmative, then could the financing within Section 2481.4 be used to pay appointed citizens as provided within Section 68 O.S. 2481.7 [68-2481.7]?" "4. If citizens appointed under Section 68 O.S. 2481.7 [68-2481.7] have completed their work of revaluating all the property within a county and delivered the said valuations to the county assessor before January 1, 1972, but the assessor as of April 5, 1972, has not applied all the valuations to the tax rolls, under Section 2481.7 may the assessor continue to contract with appointive citizens after January 1, 1972, wherein said contract to citizens update the completed valuations that were not applied to the tax rolls? May the assessor continue to contract with appointed citizens after January 1, 1972, wherein said contract of citizens update the completed valuations that were applied to the tax rolls? If your answer is in the affirmative to either or both contracts, then would the funds to pay said contract or contracts come from Section 2481.4?" In considering your questions we direct your attention to Title 68 O.S. 2481.1 [68-2481.1] (1971) which reads, as follows: "Each county assessor shall commence immediately if possible, but no later than January 1, 1969, a comprehensive program of revaluation of all taxable property within his respective county. Such program shall progress at a rate which will result in the revaluation of all taxable property within the county before January 1, 1972. Each assessor shall thereafter maintain an active and systematic program of revaluation on a continuous basis and shall establish a revaluation schedule which will result in revaluation of all taxable property within the county at least once each five (5) years. A copy of such revaluation schedule showing the time and procedures to be followed in completing the first revaluation of property in his county by January 1, 1972, shall be filed by each assessor with the Oklahoma Tax Commission before October 15, 1968." (Emphasis added) Title 68 O.S. 2481.4 [68-2481.4] (1971) provides: "The cost of the comprehensive program of revaluation shall be paid by those who receive the revenues of the mill rates levied on the property of the county in the following manner: The county assessor shall prepare a special budget for such comprehensive program of revaluation and file the same with the county equalization and excise board. That board shall apportion such cost among the various recipients of revenues from the mill rates levied, including the county, all cities and towns, all school districts and all sinking funds of such recipients, in the ratio which each recipient's total tax proceeds collected from its mill rates levied for the preceding year bears to the total tax proceeds of all recipients from all their mill rates levied for the preceding year. Such amounts shall be included in or added to the budgets of each such recipient, including sinking funds, and the mill rates to be established by the board for each such recipient for the current year shall include and be based upon such amounts. Then the board and each such recipient shall appropriate the said amounts to the county assessor for expenditure for the comprehensive program of revaluation." (Emphasis added) Title 68 O.S. 2472 [68-2472] (1971) provides in pertinent part as follows: "As soon as practicable, and not later than October 1, the county assessor shall prepare tax rolls . . ." Accordingly, there being no superseding date provided in 68 O.S. 2481.1 [68-2481.1] through 68 O.S. 2481.11 [68-2481.11], October 1, or as soon as practicable prior thereto, would be the date that all the property of a county is to be placed upon the tax rolls at its new value. You have asked whether the continuous program of revaluation, established by Section 2481.1, is to be financed pursuant to 68 O.S. 2481.4 [68-2481.4] (1971). Section 2481.4 speaks in terms of a "comprehensive program of revaluation" and directs that the cost of such revaluation be paid by those receiving the revenues. Attorney General Opinion No. 71-430 (February 17, 1972) held as follows: "A school district may be required to pay a portion of the County Assessor's cost of the comprehensive revaluation program as authorized by 68 O.S. 2481.1 [68-2481.1] and 2481.4, which will occur at least once every five years." That opinion was based upon the interpretation of Section 68 O.S. 2481.1 [68-2481.1] as establishing a continuing comprehensive revaluation program to be financed by those governmental entities enumerated in Section 2481.4 at the discretion of the county assessor. Following this rationale, the maintenance of an active and systematic program of revaluation before and after January 1, 1972, is to be financed as provided in 68 O.S. 2481.4 [68-2481.4] (1971). In your next question, you ask if continuing revaluations are to be financed pursuant to Section 2481.4 and can citizens be appointed and compensated for the subsequent five year revaluations as provided in Section 2481.7. Title 68 O.S. 2481.7 [68-2481.7] (1971) reads: "Any assessor who deems it necessary to enable him to complete the listing and the valuation of the property of his county within the time prescribed by law, (1) may appoint one or more well-qualified citizens of his county to act as his assistants or deputies; and each assistant so appointed shall, under the direction of the assessor, after taking the required oath, perform all the duties enjoined upon, vested in, or imposed upon assessors." (Emphasis added) In order to answer this question we focus our attention on the phrase "within the time prescribed by law," The act in its entirety provides for recurring five year revaluations, and specifically prescribes that the first of these periodic revaluations be completed before January 1, 1972. Although the precise date is not expressly designated, the Act provides that a second revaluation be completed on or before January 1, 1977. To adopt January 1, 1972, as the time prescribed by law, simply because it is the date last above mentioned, is to obstruct the basic purpose of the legislation, that being to provide a means for achieving a continuous five year program of revaluation. Moreover, each five year increment is a "time prescribed by law" as the Act contemplates revaluation in the continuum. Consistent with this construction is the language of the title for the subject legislation found at page 579 of the Oklahoma Session Laws 1967, Thirty First Legislature, First Session, which reads in pertinent part: "An Act relating to the valuation of property for ad valorem tax purposes; requiring revaluation of all taxable property within each county before January 1, 1972, and every five (5) years thereafter; . . . authorizing county assessors to appoint assistants; . . ." The title indicates no time restrictions on the appointment of assistants and re-emphasizes that revaluations are directed each five years. It is reasoned, had the Legislature intended that the county assessor appoint assistants only for the first five year revaluation the broad language authorizing the county assessor to appoint assistants would have contained restrictive language that such authority terminate January 1, 1972. As heretofore discussed, the county assessor may obtain the assistance of well-qualified citizens to aid in the listing and revaluation of property in each of the five year periods of revaluation. The compensation for such assistance is to be made pursuant to the terms of Section 2481.4. Therefore, it is the opinion of the Attorney General that your questions be answered as follows: (1) Your first question is answered by the provisions of 68 O.S. 2472 [68-2472] (1971), which designates October 1, or as soon as practicable prior thereto, as the date that all county property is to be placed on the tax rolls at its new value; (2) Your second question asking whether the maintenance of a continuing program of revaluation is to be financed under the terms of 68 O.S. 2481.4 [68-2481.4] (1971) is to be answered in the affirmative. (3) With respect to your third question asking whether well-qualified citizens employed pursuant to 68 O.S. 2481.7 [68-2481.7] (1971) may be compensated as per the provisions of Section 2481.4, the answer is also in the affirmative. (4) The multiple questions posed in your question No. 4 should all the answered in the affirmative, as the county assessor is authorized to contract with well-qualified citizens for the listing and revaluation of property after January 1, 1972. That the county assessor may retain well-qualified assistants beyond the primary phase of revaluation, and that the cost of such assistance would be paid by the county assessor from funds derived through the operation of Section 2481.4. (Michael D. Tinney)